HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FABIO HERRERA VICTORIANO, | CASE NO. 2:26-cv- 00886-RAJ |
| Petitioner, | ORDER GRANTING HABEAS PETITION |
| v. | |
| MARKWAYNE MULLIN, Secretary for the Department of Homeland Security; TODD LYONS, Acting Director, Immigration and Customs Enforcement; JULIO HERNANDEZ, Field Office Director, Immigration and Customs Enforcement Seattle Field Office; BRUCE SCOTT, Warden, Northwest ICE Processing Center, | |
| Respondents. | |

ORDER – 1

## I.    INTRODUCTION

THIS MATTER comes before the Court on the Petition for Writ of Habeas Corpus (the "Petition," Dkt. # 1) filed by Petitioner Fabio Herrera Victoriano, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  Respondents to the Petition include Markwayne Mullin (Secretary of the U.S. Department of Homeland Security ("DHS")), Todd Lyons (Acting Director of ICE), and Julio Hernandez (Field Office Director for ICE's Seattle Field Office) (collectively, "Respondents").[1]

The Court has reviewed the Petition, the submissions in support of and in opposition to the Petition, and the balance of the record.  For the reasons set forth below, the Court **GRANTS** Mr. Herrera Victoriano's Petition.

## II.    BACKGROUND

Petitioner Fabio Herrera Victoriano is a 44-year-old national of the Dominican Republic. Dkt. # 1 ¶ 1.  On December 22, 2023, Petitioner entered the United States at or near Eagle Pass, Texas.  *Id.* ¶ 2; Dkt. # 5-5 at 3.  Respondents provide that Petitioner was apprehended by United States Border Patrol ("USBP") on or about the same day, and was transported to the Eagle Pass Centralized Processing Center.  Dkt. # 5-5 at 3; Dkt. # 6 ¶ 4.  On December 27, 2023, Petitioner was issued a Notice to Appear ("NTA") Form I-862 charging him with violating of Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").  *Id.* ¶ 5; Dkt. # 5-2.  Petitioner was released on an Order of Release on Recognizance ("OREC") the same day.  Dkt. # 6 ¶ 5; Dkt. # 5-3.  Petitioner's OREC

---

[1] The Petition lists Kristi Noem, former DHS Secretary, and Laura Hermosillo, former Acting Field Office Director for ICE's Seattle Field Office, as Respondents.  The above-listed Respondents have been substituted under Federal Rule of Civil Procedure 25(d).  *See* Dkt. # 4 at 1 nn. 1–2.  The Clerk is directed to amend the caption to reflect this change.

Additionally, the Petition names Bruce Scott (NWIPC Warden) as a Respondent, but he is not represented by the U.S. Attorney's Office, which filed the Response in this case on behalf of the remaining Respondents. *See id.* at 1 n.3.  The Court refers to Respondents interchangeably as "the Government" throughout this Order.

ORDER – 2

specified that his release was contingent on his "enrollment and successful participation" in an Alternatives to Detention ("ATD") program.  Dkt. # 6 ¶ 5; Dkt. # 5-3.

On September 5, 2024, Petitioner was granted work authorization by USCIS.  Dkt. # 5-5 at 3.  He subsequently obtained employment in October of 2024.  Dkt. # 1 ¶ 5.  Due to requirements imposed by Petitioner's employer, he experienced occasional difficulty in timely submitting photographs to ICE as part of his participation in the ATD program.  *Id.* ¶¶ 5–6.  Petitioner explains that, in February of 2025, his deportation officer assisted him in adjusting the deadline for submission of the photographs such that he was able to comply going forward.  *Id.* ¶ 7.   Petitioner claims that his deportation officer assured Petitioner that he was "in good shape" since he had been communicative about the issue.  *Id.*

While on release, Petitioner also filed an application for asylum and related relief in the Seattle Immigration Court and attended a master calendar hearing on December 17, 2025.  *Id.* ¶ 3; Dkt. # 5-5 at 3.  However, on his way home from the hearing, Petitioner fell asleep and missed a video call from his deportation officer.  Dkt. # 1 ¶ 7.  He was thereafter notified on an ICE check-in scheduled for January 6, 2026, and was detained during this check-in following his arrival at the ICE office in Richland, Washington.  *Id.*; Dkt. # 5-5 at 3.  Petitioner's Form I-213, which appears to have been completed on the same day as his re-detention, specifies that Petitioner "was taken into ICE custody after he reported to the Richland ICE office," and that his "immigration case was reviewed, and it was determined that he was amenable to arrest due to multiple ATD violations."  Dkt. # 5-5 at 3.  The Form I-213 further provides that "[a] review of [Petitioner's] ATD record" indicated a total of seven ATD violations occurring on December 11, 2024, December 18, 2024, December 25, 2024, January 29, 2025, February 5, 2025, February 19, 2025, and December 17, 2025, and states that Petitioner's OREC "is being revoked due to violating the terms of his release."  *Id.*  Petitioner alleges that Respondents re-detained him and revoked his OREC without written notification or a pre-detention hearing, and Respondents do not dispute this characterization.  Dkt. # 1 ¶¶ 40, 58; Dkt. # 4 at 5.

ORDER – 3

Petitioner commenced this action on March 16, 2026.  Dkt. # 1.  Petitioner alleges that: (1) his re-arrest and continued detention violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and 8 C.F.R. § 1236.1(c)(9); (2) his OREC revocation and detention violates the APA, 5 U.S.C. § 706(2)(B)-(D), and 8 C.F.R. § 1236.1(c)(9); and (3) his re-detention after release on an OREC violates the Due Process Clause of the Fifth Amendment.  Dkt. # 1 ¶¶ 35–59.  As such, Petitioner seeks immediate release from immigration detention, along with certain declaratory and injunctive relief.  *Id.* at 16.

### III.  LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."  28 U.S.C. § 2241(a).  The district courts' habeas jurisdiction includes challenges to immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).  The petitioner bears the burden of proof by a preponderance of the evidence.  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

In addition, "[w]here habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'"  *Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020)).  Plaintiffs seeking injunctive relief must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see Francisco Lorenzo*, 2026 WL 237501, at *6 (applying permanent

ORDER – 4

injunction standard to injunctive relief requested in immigration habeas proceedings).

## IV.  DISCUSSION

### A.    Petitioner is detained pursuant to 8 U.S.C. § 1226(a).

Respondents contend that Petitioner is lawfully detained pursuant to Section 1225(b) of the INA.  Dkt. # 4 at 3 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. Feb. 6, 2026) and *Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. Mar. 25, 2026)).  This provision applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]"  8 U.S.C. § 1225(a)(1).   Applicants for admission are subject to mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A).  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Petitioner responds that he is subject to discretionary detention under Section 1226(a) of the INA, not mandatory detention under Section 1225(b).  Dkt. # 7 at 3.

As Respondents acknowledge, Courts in this District have repeatedly rejected their position and have instead consistently concluded that petitioners who are released on an OREC and subsequently re-detained are subject to Section 1226(a), not Section 1225(b).  Dkt. # 4 at 5 (citing *Rana v. Bondi*, No. 2:26-cv-00244-TL, 2026 WL 472800, at *3 (W.D. Wash. Feb. 19, 2026).  This includes petitioners, who, as here, appear to have been "apprehended upon arrival" prior to their initial release on recognizance.[2]  *See Del Valle*

---

[2] While Respondents' declarant states that Petitioner was "encountered by Customs and Border Protection" on or about December 22, 2023, the Court notes that the underlying record in this case does not specify the exact date and time of Petitioner's initial apprehension by USBP, and instead provides that Petitioner "unlawfully entered the United States on or about 12/22/2023 at or near Eagle Pass, TX," and that "[t]he USBP apprehended [redacted], served him with a Notice to Appear, and released him on his own recognizance."  Dkt. # 6 ¶ 4; Dkt. # 5-5 at 3.  However, Petitioner does not appear to contest in his Traverse Reply the timeline offered by Respondents. *See generally* Dkt. # 7.  As such, the Court assumes, without deciding, that Petitioner was "apprehended upon arrival" for the purposes of determining the statutory basis of Petitioner's detention. *See, e.g.*, *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932,

ORDER – 5

*Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *7, (W.D. Wash. Nov. 26, 2025) (citation omitted) (determining that petitioner, who had been apprehended on arrival, released on an OREC, and later re-detained, was subject to discretionary detention under § 1226(a)); *Diaz-Aguero v. Noem*, No. 2:26-CV-00637-TLF, 2026 WL 915053, at *2 (W.D. Wash. Apr. 3, 2026) (same).  The key question applicable to a petitioner apprehended upon arrival turns on "the government's treatment" of the petitioner: "where a petitioner has been 'treated by [the government] as subject to discretionary detention under section 1226,' rather than mandatory detention under section 1225,' the former is more likely to apply."  *Del Valle Castillo*, 2025 WL 3524932, at *5 (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (W.D. Wash. Aug. 19, 2025)).

Here, the record demonstrates that Petitioner is subject to detention under Section 1226(a).  Petitioner was released on an OREC, rather than humanitarian parole, in December 2023, and the OREC submitted by Respondents specifically provides that Petitioner's release was "[i]n accordance with" 8 U.SC. § 1226.  Dkt. # 5-3.  This language underscores the government's treatment of Petitioner as subject to Section 1226(a) rather than Section 1225(b).  *See, e.g.*, *Aguilar-Graterol v. Warden/Facility Administrator, Northwest Detention Center*, No. 2:26-CV-00997-LK, 2026 WL 1162705, at *4 (W.D. Wash. Apr. 29, 2026) (OREC specifying that petitioner's release was "pursuant to 'section 236 of the Immigration and Nationality Act'" indicated government's treatment of petitioner as "subject to discretionary detention under 8 U.S.C. § 1226 from his arrival in the United States until [his subsequent re-detention]"); *Soto v. Bondi*, No. 2:26-CV-00652-BAT, 2026 WL 972731, at *5 (W.D. Wash. Apr. 10, 2026) (same); *Fiston v. Bondi*, No. 2:26-CV-00904-JHC, 2026 WL 926064, at *3 (W.D. Wash. Apr. 6, 2026) (noting that presence of this language made petitioner's case "even stronger").

---

at *5 (W.D. Wash. Nov. 26, 2025) (analyzing statutory provision applicable to petitioners "apprehended upon arrival" prior to initial release).

ORDER – 6

Relying on two non-binding decisions from outside this Circuit, the Government argues that "DHS's prior practice of OREC releases for applicants for admission does not mean that those [noncitizens] are no longer applicants for admissions." Dkt. # 4 at 4 (citing *Buenrostro-Mendez*, 166 F.4th at 506; *Avila*, 170 F.4th at 1137). Respondents further refer to a July 2025 DHS memorandum to ICE employees clarifying that, "[e]ffective immediately, it is the position of DHS that such [noncitizens] are subject to detention under [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by [8 U.S.C. § 1182(d)(5)]." *Id.* (citing *Rodriguez Vasquez v. Bostock*, 802 F. Supp. 3d 1297, 1308 (W.D. Wash. 2025)). The case to which Respondents cite, however, explicitly rejected the argument Respondents advance, as have reviewing courts in this District in the intervening months. *Rodriguez Vasquez*, 802 F. Supp. 3d 1297, 1322–36 (W.D. Wash. 2025); *see also*, *e.g.*, *P.T. v. Hermosillo*, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025); *Corado v. Bondi*, No. C26-1081-MLP, 2026 WL 1113386, at *3 (W.D. Wash. Apr. 24, 2026) (same).

Additionally, Petitioner's December 2023 NTA further demonstrates that he has been treated as subject to detention under Section 1226(a) since his arrival in the United States: the NTA provides that Petitioner was designated as a "[noncitizen] present in the United States who has not been admitted or paroled," rather than as an "arriving [noncitizen]," and was charged as subject to removal pursuant to Section 212(a)(6)(A)(i) of the INA. Dkt. # 5-2; *see, e.g.*, *Del Valle Castillo*, 2025 WL 3524932, at *6 (NTA charging petitioner as removable only under 8 U.S.C. § 1182(a)(6)(A)(i) is evidence that petitioner is detained under § 1226); *Corado*, 2026 WL 1113386, at *3 (same). Additionally, both arrest warrants submitted by Respondents—including the warrant from January 2026 authorizing Petitioner's re-detention—are directed to "[a]ny immigration officer authorized pursuant to [8 U.S.C. § 1226.]" Dkt. ## 5-1, 5-4. "Respondents' own exhibits," including these warrants, thus "unequivocally establish that [Petitioner] was detained pursuant to Respondents' discretionary authority under § 1226(a)." *Singh v.*

ORDER – 7

*Noem*, No. 2:26-CV-00766-TLF, 2026 WL 1045507, at *3 (W.D. Wash. Apr. 17, 2026) (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. Aug. 13, 2025)).

The Court accordingly concludes that Petitioner's re-arrest and detention is governed by Section 1226(a), not Section 1225(b). Even if Petitioner were detained under Section 1225(b), however, Respondents' statutory authority "cannot replace the constitutional requirement of procedural due process." *Osorio Molina v. Hermosillo*, No. 2:26-CV-00095-RAJ, 2026 WL 381161, at *2 n.1 (W.D. Wash. Feb. 11, 2026) (citation omitted); *see also id.* at 2 (collecting cases). As such, the Court finds in the alternative that "the due process requirements articulated in this order apply regardless of whether [Petitioner] is detained under Section 1225(b) or 1226(a)."). *Herrera Gomez v. Wamsley*, No. 25-cv-2642, 2026 WL 279966, at *3 (W.D. Wash. Feb. 3, 2026) (citing *Flores Torres v. Hermosillo*, No. 2:25-cv-02687-LK, 2026 WL 145715, at *2, 7–8 (W.D. Wash. Jan. 20, 2026)).

**B.      Petitioner's detention violates the Due Process Clause.**

The Fifth Amendment of the U.S. Constitution forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334–35.

ORDER – 8

Due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted).  In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the three-part test set forth in *Mathews* applies in the immigration detention context.  *Id.* at 1207.  District courts have subsequently applied the *Mathews* test in that context, including in circumstances similar to this case. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–24 & 1321 n.4 (W.D. Wash. 2025) (collecting cases and applying *Mathews* test to noncitizen released on recognizance and re-detained without prior notice and hearing).

The parties appear to agree that the *Mathews* test applies here.  *See* Dkt. # 1 ¶¶ 52–59; Dkt. # 4 at 5–8.  The Court therefore turns to each of the *Mathews* factors to determine whether Petitioner's OREC revocation and re-detention comport with constitutional due process requirements.

### i.   Petitioner has a protected interest in his liberty.

With respect to the first *Mathews* factor, Respondents concede that they "recognize the 'weighty liberty interests implicated by the Government's detention of noncitizens.'" Dkt. # 4 at 6 (citing *Reyes v. King*, No. 19-cv-8674, 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021)).  The Court further notes that this liberty interest applies to "[i]ndividuals on release, even when such release is conditional." *Reyes v. Hermosillo*, No. 2:26-CV-00270-TLF, 2026 WL 507678, at *3 (W.D. Wash. Feb. 24, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1321–22).  Even where, as here, the Government alleges that a petitioner has repeatedly violated the terms of his release, courts have found that notice and a pre-detention hearing is still required to comply with due process.  *See Herrera Gomez*, 2026 WL 279966, at *3 (citing *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026)); *Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025).

ORDER – 9

In this case, when Petitioner was released on his recognizance in December of 2023, he "took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025) (citing *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 787 F.Supp.3d 1083, 1093 (E.D. Cal. Mar. 3, 2025)). During the twenty-five months that Petitioner was on release, he took steps in reasonable reliance on this liberty interest, including obtaining work authorized and applying for asylum. Dkt. # 1 ¶¶ 3, 5; Dkt. # 5-5 at 3; *see Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *2–4, 9 (W.D. Wash. Mar. 12, 2026) (petitioners released on ORECs, including several who had applied for asylum and/or obtained work permits while on release, had "established liberty interests in the months and years they were permitted to live in the United States"). The first *Mathews* factor therefore weighs in favor of Petitioner.

### ii. The risk of erroneous deprivation of liberty is high.

With respect to the second *Mathews* factor, Respondents argue that "the risk of a constitutionally significant and erroneous deprivation of Petitioner's liberty did not necessitate a pre-deprivation hearing." Dkt. # 4 at 6. Respondents argue that "Petitioner's re-detention qualifies as a special case due to his repeated ATD violations," such that a post-deprivation hearing is sufficient. *Id.* The Government cites to *Zinermon v. Burch*, 494 U.S. 113, 127 (1990), and *Martinez Hernandez v. Andrews*, No. C25-1035, 2025 WL 2495767, at *11–12 (E.D. Cal. Aug. 28, 2025) in support of this argument. As multiple courts in this District have concluded, however, Respondents' reliance on these cases in the present context is inappropriate. *See Sarwari v. Wamsley*, C26-00121TL, 2026 WL 279968, at *4–5 (W.D. Wash. Feb. 3, 2026); *Bravo-Zambrano v. Bondi*, No. C26-0167JLR, 2026 WL 879245, at *3–4 (W.D. Wash. Mar. 31, 2026); *Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *9 (W.D. Wash. Mar. 11, 2026); *Reyes*, 2026 WL 507678, at *3. With respect to *Zinermon*, "[t]here is simply nothing" in the case "that

ORDER – 10

could plausibly support Respondents' statement that 'Petitioner's re-detention qualifies as a special case due to his ATD violations.'" *Sarwari*, 2026 WL 279968, at *5. As to *Martinez Hernandez*, the court in that case, and those in the cases upon which it relied, were adjudicating motions for preliminary injunctions, not habeas petitions. *Martinez Hernandez*, 2025 WL 2495767, at *12 (collecting cases). In doing so, the reviewing courts clarified that, while "prompt, post-deprivation process [was] required" even *before* the petitions were adjudicated, they were "*not* making an ultimate determination that [a prompt, post-deprivation hearing] was all the process the petitioners were due." *Sarwari*, 2026 WL 279968, at *5 (citing *Martinez Hernandez*, 2025 WL 2495767, at *12) (emphasis in original).

Additionally, in *Martinez Hernandez*, DHS recommended a designation of "No Bond/Flight Risk/Criminal History" for the petitioner, who had been previously arrested on charges of robbery, preventing/dissuading a victim/witness, assault with a deadly weapon, and battery. *Martinez Hernandez*, 2025 WL 2495767, at *2, 4. Accordingly, the Court found that, unlike in *E.A. T.-B.*, "providing [the petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *Id.* at *12 (discussing *E.A. T.-B.*, 795 F.Supp.3d 1316). This case, by contrast, is closer to *E.A. T.-B.*, as Petitioner has no criminal history in the United States. *Sarwari*, 2026 WL 279968, at *5 (internal citations omitted) ("[T]he instant case is less like *Martinez Hernandez*, and more like *E.A. T.-B.* . . . *E.A. T-B* does not mention criminal history[]; Petitioner has none."). Rather, Petitioner's detention was "based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard." *Lnu v. Hermosillo*, No. C26-635-MLP, 2026 WL 691944, at *2 (W.D. Wash. Mar. 11, 2026).

Though Respondents in this case assert that Petitioner's seven ATD violations while on release formed the basis for its decision to re-detain Petitioner, the Court observes that six of these violations occurred approximately one year before his January 6, 2026 re-

ORDER – 11

detention. *See* Dkt. # 5-5 at 3 (listing six ATD violations occurring between December 11, 2024 and February 19, 2025). Petitioner explains that these six violations stemmed from the difficulty he experienced in uploading photographs given restrictions imposed by his employer. Dkt. # 1 ¶¶ 4–6. Respondents do not dispute Petitioner's statement that he successfully worked with his deportation officer to adjust his check-in deadlines so as not to conflict with his work schedule, and that Petitioner incurred no similar ATD violations thereafter. *Id.* ¶ 7. Respondents "offer no explanation for why it took ICE so long to act" after his first six violations, and the record suggests that "ICE did not deem these alleged technical violations sufficiently serious to warrant a return to custody." *Kumar v. Noem*, No. C26-294-SKV, 2026 WL 668335, at *5 (W.D. Wash. Mar. 10, 2026).

Petitioner's seventh ATD violation occurred on December 17, 2025, the same day as his master calendar hearing. Dkt. # 5-5 at 3. Petitioner explains that he "missed a video call from his detention officer" while travelling back from the hearing. Dkt. # 1 ¶ 7. Petitioner alleges that he was notified of an ICE check-in shortly thereafter, and was ultimately detained at that check-in. *Id.* Respondents do not directly dispute Petitioner's narrative, instead simply commenting that "Petitioner failed to comply with the conditions multiple times over the course of a year" and was subsequently re-arrested and detained. Dkt. # 4 at 6. However, ICE's failure to act on Petitioner's initial violations for over a year, coupled with its opposing approach after a single missed video call immediately following Petitioner's attendance at a master calendar hearing, raises the specter of potential pretext contemplated in *E.A. T.-B.* 795 F. Supp. 3d at 1322; *Bravo-Zambrano*, 2026 WL 879245 at *4 (citing *Martinez Hernandez*, 2025 WL 2495767, at *11) ("Additionally, given that the Government waited a year after the first OREC infraction to take enforcement action, it entirely fails to show how Petitioner's circumstances constitute a special case that 'urgently require[s] arrest' such that providing notice and a pre-deprivation hearing would reasonably be considered "impracticable[.]").

ORDER – 12

Respondents' submission of a Form I-213 providing that Petitioner's "immigration case was reviewed, and it was determined that he was amenable to arrest due to multiple ATD violations," and listing the alleged violations, does not change the Court's analysis. *See* Dkt. # 5-5 at 3. First, the Form I-213 appears to have been completed on January 6, 2026, the same date as Petitioner's re-detention. *Id.*; *see Marin v. ICE Field Office Director*, No. C26-1071-KKE, 2026 WL 1123516, at *1 (W.D. Wash. Apr. 24, 2026) (noting that Form I-213 identifying ATD violation "appears to have been completed on the same date of [the petitioner's] arrest"); *Kumar*, 2026 WL 668335, at *5 (observing that the "reason cited for [the petitioner's] re-detention in the Form I-213," which was prepared at the time of his arrest, "was that 'routine system queries' revealed he 'had multiple violations and was not complying with his [ATD] conditions.'"); *Fuenmayor Rodriguez v. Noem*, No. 2:26-CV-00673-LK, 2026 WL 799363, at *1 (W.D. Wash. Mar. 23, 2026) (granting habeas relief notwithstanding Form I-213 attributing petitioner's arrest to ATD violations). Second, Respondents did not submit "any primary records showing the claimed ATD violations." *Albornoz v. Hermosillo*, No. 2:25-CV-02713-LK, 2026 WL 444983, at *1 n.4 (W.D. Wash. Feb. 17, 2026). And third, Petitioner's arrest warrant makes no mention of the ATD violations, and references instead (1) "the pendency of ongoing removal proceedings" against Petitioner and (2) indicia that Petitioner "either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." Dkt. # 5-1. *See, e.g.*, *Abraham v. Noem*, No. 2:26-CV-00823-DGE, 2026 WL 904677, at *5 (W.D. Wash. Mar. 2, 2026) (releasing petitioner purportedly re-detained for ATD violations where the arrest warrant "does not refer to the ATD violations, and instead notes that records indicate that 'the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law[.]'"); *Bravo-Zambrano*, 2026 WL 879245, at *4 ("Indeed, the warrant authorizing his re-arrest does not refer to OREC infractions . . . Here, where it is undisputed that [the petitioner] was arrested with no notice of the reasons for the arrest, the risk of erroneous deprivation is high."). The

ORDER – 13

record as a whole, therefore, does not reflect that Petitioner was provided with advance notice or a genuine opportunity to contest the basis of his re-detention. And as courts throughout this District and Circuit have repeatedly found, "a petitioner who misses an appointment or hearing is nonetheless entitled to a pre-deprivation hearing." *E.G.M. v. Scott*, No. C26-0744-KKE, 2026 WL 914803, at *5 (W.D. Wash. Apr. 3, 2026) (collecting cases). In other words, "[u]ltimately, even if Petitioner's arrest was not pretextual and was solely motivated by ICE's realization of his [release order] violations," it does not follow that "Petitioner can be detained for those violations without a hearing." *E.A. T.-B.*, 795 F. Supp. 3d at 1322.

Finally, Respondents argue that, because Petitioner "does not deny the ATD violations occurred . . . there is little risk of a constitutionally significant and erroneous deprivation of Petitioner's liberty." Dkt. # 4 at 6–7. However, Petitioner's acknowledgement of the ATD violations in his briefing does not absolve the Government of its obligation to provide advance notice and a pre-deprivation hearing. *E.G.M.*, 2026 WL 914803, at *5–6 (rejecting Government's argument that pre-deprivation hearing was not necessary because the petitioner "admittedly failed to appear for an immigration court proceeding"). This position accords with the core purpose underlying the requirement of a pre-deprivation hearing prior to revocation of a noncitizen's release, which is "to determine if that noncitizen is a flight risk or danger to the community." *Aslan v. Wamsley*, No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (citing *E.A. T.-B.*, 795 F. Supp. 3d 1324)). Even in cases where the Government alleges that a petitioner "repeatedly" violated the terms of his release, a pre-deprivation hearing would enable a "neutral arbiter [to] determine[] whether those facts show that [the petitioner] is a flight risk or danger to the community." *Jimenez Carrion v. Hermosillo*, No. 2:26-CV-00694-JNW, 2026 WL 850753, at *3 (W.D. Wash. Mar. 27, 2026) (quoting *Pineda*, 2026 WL 25510, at *5). And as Respondents themselves acknowledge, while Petitioner does not deny that the violations occurred, he does "attempt[] to explain" them in the Petition. Dkt. # 4 at 6 (citing Dkt. # 1

ORDER – 14

¶¶ 5–7). While Respondents may not consider Petitioner's explanations to be compelling, this is not a substitute for constitutionally adequate process. "That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B.*, 795 F. Supp. 3d at 1322. A pre-deprivation hearing before a neutral arbiter is the appropriate vehicle and would have allowed Petitioner "an opportunity to explain the circumstances surrounding" his ATD violations. *Vasilchuk v. Immigr. & Customs Enf't Field Offfice Dir.*, No. C26-0038JLR, 2026 WL 575327, at *2 (W.D. Wash. Mar. 2, 2026). This process would have offered Petitioner an opportunity to demonstrate "that the official's original assessment that he was not a flight risk and should not be detained should remain unchanged" notwithstanding his admissions regarding the ATD violations. *Gregorio Ordonez v. Bondi*, No. 2:25-CV-02356-JHC-TLF, 2025 WL 3852444, at *5 (W.D. Wash. Dec. 19, 2025), *report and recommendation adopted*, No. 2:25-CV-02356-JHC-TLF, 2026 WL 30022 (W.D. Wash. Jan. 5, 2026). The Government's failure to offer that opportunity to Petitioner created a heightened risk of erroneous deprivation.

Therefore, the second *Mathews* factor favors Petitioner.

> iii.    <u>Respondents' interest in re-detaining Petitioner without due process is minimal</u>.

As to the third *Mathews* factor, Respondents cite the "heightened government interest" in the immigration detention context. Dkt. # 4 at 7 (citing *Rodriguez Diaz*, 53 F.4th at 1206). Respondents note that the government's interest is especially strong "when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." *Id.* (citing *Rodriguez Diaz*, 53 F.4th at 1208). The Government also cites the government's interest in "protecting immigration proceedings from unnecessary delay, especially considering Congress's purpose for enacting 8 U.S.C. § 1225(b)." *Id.*

ORDER – 15

None of these governmental interests, however, are unduly burdened by the provision of a pre-deprivation hearing. On the contrary, "the Government's interest in re-detaining non-citizens previously released without a hearing is low." *E.A. T.-B.*, 2025 WL 2402130, at *5 (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). Indeed, "[t]he fact that Respondents have not even alleged that Petitioner poses a flight right or represents a danger to any person undermines any suggestion that Respondents' interests must be satisfied immediately." *Sarwari*, 2026 WL 279968, at *6. Additionally, Respondents' argument regarding the prevention of unnecessary delay is illogical, and would be so if Section 1225(b) did govern Petitioner's detention, given that Petitioner's immigration case "can proceed without [his] detention." *Espinoza Palacios*, 2026 WL 686138, at *8.

Accordingly, the third *Mathews* factor, like the first two, weigh in Petitioner's favor. Because all three *Mathews* factors favor Petitioner, the Court concludes that Respondents' re-detention of Petitioner and revocation of his OREC violated his procedural due process rights.

**C.      The Court need not reach Petitioner's other claims.**

In addition to his due process claim, Petitioner asserts that his re-arrest and detention violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)–(D), and 8 C.F.R. § 1236.1(c)(9). Dkt. # 1 ¶¶ 35–47. Because the Court concludes that Petitioner's detention violates the Due Process Clause of the Fifth Amendment, the Court need not resolve these claims.

## V.      REMEDY

Having determined that Petitioner was re-detained without due process, the Court must impose the appropriate remedy. Petitioner requests immediate release from custody and an order prohibiting Respondents from transferring him this District without 48 hours'

ORDER – 16

advance notice.[3] Dkt. # 1 at 16. Respondents counter that "Petitioner's re-detention was triggered by the accretion of seven failures to adhere to ATD requirements," and, as such, "the specific circumstances of Petitioner's re-detention, at most, call for a post-detention bond hearing to mitigate the risk of erroneous deprivation." Dkt. # 4 at 8.

The Court agrees that release is the appropriate remedy. Where, as here, a petitioner was re-detained without notice or a pre-deprivation hearing in violation of due process, the detention is "unlawful from its inception and typically requires immediate release." *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *12 (W.D. Wash. Apr. 9, 2026); *Kirykovich v. Hernandez*, No. 2:26-CV-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante—that is, to return [the petitioner] to the conditions that existed before his unlawful detention."). As other courts in this District and Circuit have found, post-detention bond hearing would be an "inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F.Supp.3d at 1324 (quoting *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Ordering a hearing while the petitioner remains detained "would not adequately vindicate his rights; it would reward the government for detaining first and asking questions later." *Kirykovich*, 2026 WL 890459, at *4. Accordingly, the Court concludes that the appropriate remedy in this case is immediate release.

---

[3] Petitioner's prayer for relief also includes requests that the Court: (1) assume jurisdiction over this matter; (2) issue an Order to Show Cause ordering Respondents to demonstrate why the Petition should not be granted; and (3) declare that Petitioner's re-detention violates the Due Process Clause of the Fifth Amendment and statute and regulation. Dkt. # 1 at 16. These requests have all been addressed by this Order or have otherwise been resolved during the pendency of this case.

ORDER – 17

With respect to Petitioner's request for an order preventing his transfer from the District, Dkt. # 1 at 16, the Court construes this request as seeking an order requiring pre-transfer notice until Petitioner receives habeas relief. *Toribio v. Scott*, No. 2:25-CV-02540-TMC, 2025 WL 3906472, at *2 (W.D. Wash. Dec. 31, 2025). This request will be moot once this Order granting habeas relief is entered. *Id.* To the extent Petitioner seeks other relief, those issues have not been properly briefed.

## VI.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner Fabio Herrera Victoriano's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court **ORDERS** that Respondents:

(1)    Shall immediately release Petitioner Fabio Herrera Victoriano from custody;

(2)    Shall file with the Court a notice within two (2) business days confirming Mr. Herrera Victoriano's release; and

(3)    Shall not re-detain Mr. Herrera Victoriano unless and until Respondents provide him with ten (10) days' written notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate.

Dated this 1st day of May, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 18